

J. Andrew McKamie, DDS, PC
3645 N. Council Road

December 12, 2007

Bethany OK, 73008


Dear James McKamie,



Thank you for selecting Banc of America Practice Solutions as your financial partner. We look forward to building a relationship that helps you reach both your personal and professional goals, backed by Bank of America's commitment to world-class Customer satisfaction.

Enclosed is a copy of your signed agreement. Please keep it with your other important documents for future reference. You will receive your first monthly statement shortly, with a payment due date of January 20, 2008. Your monthly payment should be sent to the address below, which will also appear on the statement. The payment address is:

> Banc of America Practice Solutions
> P.O. Box 809121
> Chicago, IL  60680-9121

Expanded benefits
Our commitment to you is an expanded level of service and benefits, including:
- Access to business experts from the #1 Small Business Bank
- Access to over 5,800 Bank of America banking centers and nearly 17,000 ATMs coast-to-coast with a Bank of America checking or savings account
- Dedicated associates ready to assist you in more communities across America than any other consumer bank


We welcome the opportunity to discuss any additional financing needs you may have. No other company offers the same level of personal attention, convenience, and simplicity for you and your business. Please call us at 1-888-876-0112, Monday through Friday from 8 a.m. to 8 p.m. (Eastern Time).

Sincerely,

*[signature]*
Kay Griffith
Senior Vice President


Enclosure

# Express Loan and Security Agreement

| Loan Amount | Interest Rate | Monthly Payment(s) | Term |
|---|---|---|---|
| $ 112,599.58 | 7.99% | 120 consecutive monthly payments @ $1,365.55 each | 120 (Months) |

[X] If this box is checked, the Interest Rate set forth above is a per annum fixed rate of interest, and interest will accrue on your Loan in accordance with the provisions of Section 5 below.

[ ] If this box is checked, the Interest Rate set forth above is a per annum variable rate of interest, and interest will accrue on your Loan in accordance with the provisions of Section 6 below.

[ ] If this box is checked, your Loan is made under a Deferred Interest & Payment Plan. This Plan provides for the deferment of interest and payments for 0 months. Section 7 below explains the terms and conditions for this Plan.

[ ] If this box is checked, your Loan is made under a Interest Only Payment Plan. This Plan provides for monthly payments of interest only for 0 months. Section 8 below explains the terms and conditions for this Plan.

THIS LOAN AND SECURITY AGREEMENT ("Agreement") is made this 27 day of November, 2007, by and between J. Andrew McKamie, DDS, PC, (together with his/her/its successors and assigns, the "Borrower") and Bank of America, N.A., a national banking association, having an office at 2740 Airport Drive, Suite 300, Columbus, OH 43219 (together with its agents, affiliates, successors and assigns, the "Lender"). Lender has made a term loan for the original principal amount, and at interest rate and for the term, stated above (the "Loan"). If the Borrower consists of more than one person or organization, all references to "Borrower" shall mean each such person and/or organization, jointly and severally and all such persons and/or organizations shall be jointly and severally liable for payment of all obligations under and in connection with the Loan. Lender has provided the Loan on the condition that the Borrower enters into this Agreement, which shall, among other things, govern and secure the Loan and the obligations thereunder of the Borrower to the Lender.

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises, covenants and agreements of the parties contained in this Agreement, the Borrower and the Lender do agree as follows:

1. PROMISE TO PAY: Borrower agrees to pay to the order of Lender, on or before the Payment Due Date shown on each monthly Billing Notice, either (i) the Principal Balance stated on the monthly Billing Notice; or (ii) at Borrower's option, at least the Total Payment Due stated on the monthly Billing Notice. Your payments will be allocated in a manner determined by Lender in accordance with applicable law, and may change from time to time. Payments greater than the Total Payment Due stated on the monthly Billing Notice or additional payments may be made at any time without a prepayment penalty but shall not relieve Borrower of its obligations to pay the next succeeding Total Payment Due stated on the monthly Billing Notice. Lender can accept late or partial payments, as well as payments that are marked "paid in full" or with other restrictive endorsements, without losing any of its rights under this Agreement, and any payment of a smaller sum than due, regardless of any endorsement restriction, will not constitute an accord and satisfaction and must be sent to: Banc of America Practice Solutions, Inc., 2740 Airport Drive, Suite 300, Columbus, Ohio 43219, Attn: Customer Service Manager, or such other address as Lender may indicate from time to time in writing. Any communications with Lender concerning any dispute of any amounts due on your Loan, as well as any payments of less than the full amount due and payable hereunder must be sent to the address set forth in the preceding sentence. All other payments Borrower makes on the Loan are to be mailed to the address set forth on the monthly Billing Notice. Payment must be received at Lender's address stated on the monthly Billing Notice on or before the Payment Due Date stated thereon. All information contained on the monthly Billing Notice shall be deemed correct unless Borrower notifies Lender in writing advising of any error or disputed amount within fifteen (15) days of Borrower's receipt of the monthly Billing Notice.

2. USE OF LOAN: The Loan proceeds are to be used by designated employees and agents of Borrower for legitimate business purposes and not for consumer purposes as defined in Federal Regulation Z or applicable state law. Borrower promises to pay for all advances under the Loan made by Lender to Borrower or anyone Borrower allows to procure the Loan plus interest, fees, and other charges due on the Loan. All persons who are Borrowers on this Account are jointly and severally liable for repayment, regardless of who received the benefit of the Account or to whom any advance of credit was made. Default by any Borrower will constitute default by all Borrowers. Bank of America, N.A. may initiate collection and/or legal proceedings against any Borrower. Borrower agrees to the terms of all refund, return or exchange policies governing its purchases from participating merchants. EACH BORROWER AND EVERY OTHER PERSON WHO IS A BORROWER WAIVES ALL SURETYSHIP AND OTHER SIMILAR DEFENSES.

R10.07                Reference Number: OMBNAA00012P

3. PAYMENTS: The Loan is a fixed term payment plan requiring consecutive monthly payments of principal and interest, each in an amount sufficient to fully pay the principal amount of the Loan over the Term. The Term for your Loan is set forth above in the box captioned "Term". The repayment terms for the Loan, including Interest Rate, Monthly Payment and Term, are set forth in the boxes above.
captioned "Term". The repayment terms for the Loan, including Interest Rate, Monthly Payment and Term, are set forth in the boxes above.

4. FEES: Borrower shall pay fees in accordance with Lender's schedule of fees for the Loan in effect from time to time, including but not limited to the following: (i) late payment charge assessed in the amount set forth on the monthly Billing Notice if the Total Payment Due is not received within ten (10) days of its due date; (ii) a returned payment fee of $25.00; and (iii) documentation fees for copies of sales drafts, previously billed statements, or other documents provided by Lender at Borrower's request, and (iv) costs, fees and expenses incurred by the Lender in connection with the taking, perfection, preservation, protection and/or release of a lien on, or security interest in, the Collateral, including, without limitation, all filing and/or recording taxes or fees, all costs of lien and record searches, reasonable attorneys' fees in connection with all legal opinions required, if any, appraisal costs, and all related costs, fees and expenses.

5. INTEREST RATE; FIXED RATE INTEREST LOANS: Unless the Loan is made under the Deferred Interest & Payment Plan, or an Interest Only Payment Plan, then Lender shall charge interest on the outstanding principal balance of the Loan at a per annum fixed rate of interest. The interest rate established for your Loan is set forth above in the box captioned "Interest Rate." Interest on the outstanding principal balance of the Loan accrues from the date of disbursement of the Loan amount until the loan balance is paid at maturity or in full. The total outstanding balance of the Loan, including any accrued and unpaid interest, fees and other charges, is due and payable in full at the end of the Term.

6. INTEREST RATE; VARIABLE RATE INTEREST LOANS: Unless the Loan is made under the Deferred Interest & Payment Plan, or an Interest Only Payment Plan, then Lender shall charge interest on the outstanding principal balance of the Loan at a variable interest rate as low as 3.90% per annum and as high as 8.65% per annum plus the highest prime rate quoted from time to time in the "Money Rates" section of The Wall Street Journal ("WSJ Prime"). The interest rate established for your Loan is set forth above in the box captioned "Interest Rate." The Interest Rate for the Loan shall adjust on the 1st business day of each calendar quarter consistent with any changes in WSJ Prime, which are effective on that date; however, your monthly payment will not change and will remain the same. Accordingly, if a change increasing the Interest Rate occurs, the last payment due under the Term will be higher, and if a change decreasing the Interest Rate occurs, the last payment due under the Term will be lower (or your Loan will pay off earlier than as scheduled under the Term). Interest on the principal balance of the Loan accrues from the date of disbursement of the Loan amount until the loan balance is paid at maturity or in full. The total outstanding balance of the Loan, including any accrued and unpaid interest, fees and other charges, is due and payable in full at the end of the Term.

7. DEFERRED INTEREST & PAYMENT PLAN: A Loan made under the Deferred Interest & Payment Plan provides for the deferral of interest and monthly payments for the number of months specified above from the date the Loan was made to Borrower ("Deferment Period"). Interest will accrue on the Loan as provided in Section 5 or Section 6 above (depending on whether your Loan is a fixed interest rate or a variable interest rate Loan) at the rate set forth above in the box captioned "Interest Rate" from the date of disbursement of the Loan. If the balance of the Loan is not paid in full before the expiration of the Deferment Period, accrued interest from the date of disbursement of the Loan will be added to the balance of the Loan and interest will continue to accrue thereafter on the Loan balance until the Loan is paid at maturity or in full. Borrower shall not be required to make monthly payments during the Deferment Period; thereafter, Borrower shall make monthly payments to Lender in accordance with Section 3 of this Agreement.

8. INTEREST ONLY PAYMENT PLAN: A Loan made under the Interest Only Payment Plan provides for the monthly payments of interest only for the number of months specified above from the date the Loan was made to the Borrower. Interest will accrue on the Loan as provided in Section 5 or Section 6 above (depending on whether your Loan is a fixed interest rate or a variable interest rate Loan) at the rate set forth above in the box captioned "Interest Rate" from the date of disbursement of the Loan until the Loan balance is paid at maturity or in full. Borrower shall be required to make monthly payments of accrued interest only on the balance of the Loan for the Interest Only Period set forth in the box above captioned "Interest Only Payment Plan"; thereafter, Borrower shall make monthly payments to Lender in accordance with Section 3 of this Agreement.

9. **EVENTS OF DEFAULT:** Any of the following with respect to Borrower or any co-signer or guarantor of the Loan shall constitute a default hereunder: (i) insolvency, bankruptcy, dissolution, death, incompetency, issuance of an attachment or garnishment against Borrower, any guarantor or any of the Collateral; (ii) failure to make any payment when due under the Loan and/or any or all other loans made by Lender to Borrower or any guarantor; (iii) failure to provide current financial information upon request by Lender; (iv) the making of any false or misleading statement on any application or any financial statement for the Loan or for any or all other loans made by Lender to Borrower or any guarantor; (v) Lender in good faith believes the prospect of payment under the Loan and/or any or all other loans made by Lender to Borrower or any guarantor is impaired; (vi) Borrower or any guarantor under or in connection with the Loan and/or any or all other loans made by Lender to Borrower or any guarantor fails to timely and properly observe, keep or perform any term, covenant, agreement or condition in this Agreement, in any other agreement, document or instrument which evidences, secures or relates to the Loan and/or any or all other loans made by Lender to Borrower or any guarantor (collectively, the "Loan Documents") or challenges the validity of any material provision of the Loan Documents; (vii) default shall be made with respect to any other indebtedness for borrowed money of Borrower or any other guarantor, if the default is a failure to pay at maturity or if the effect of such default is to accelerate the maturity of such indebtedness for borrowed money or to permit the holder or obligee thereof or other party thereto to cause any such indebtedness for borrowed money to become due prior to its stated maturity; (viii) the Lender in its sole discretion determines in good faith that an event has occurred that has a materially adverse affect on any Borrower, any guarantor or any Collateral; and/or (ix) any change shall occur in the ownership of the Borrower or any guarantor.

10. **REMEDIES:** Upon the occurrence of a default, all or any portion of the entire amount owing on the Loan, and any and all other loans made by Lender to Borrower or any guarantor, shall, at Lender's option, become immediately due and payable without demand or notice. Interest after default, whether prior to or after judgment by a court of competent jurisdiction, shall accrue at the rate of five percent (5%) above the contractual interest rate upon the outstanding balance until paid in full. You shall pay any costs Lender may incur including without limitation reasonable attorney's fees and court costs should the Loan and/or any and all other loans made by Lender to Borrower and any guarantor be referred to an attorney for collection to the extent permitted under applicable state law.

11. **AMENDMENT:** This Agreement may not be amended, modified, or changed in any respect except by an agreement in writing signed by the Lender and the Borrower. No waiver of any provision of this Agreement, or consent to any departure by the Borrower or any guarantor therefrom, shall in any event be effective unless the same shall be in writing. No course of dealing between the Borrower, any guarantor and the Lender, and no act or failure to act from time to time on the part of the Lender, shall constitute a waiver, amendment or modification of any provision of this Agreement or any right or remedy under this Agreement or under applicable laws.

12. **UNAUTHORIZED USE:** Borrower shall be responsible for selecting authorized personnel to procure the Loan and/or any and all other loans made by Lender to Borrower. Borrower shall be liable for all unauthorized purchases using the proceeds of the Loan and/or any and all other loans made by Lender to Borrower. Borrower assumes all risk and costs with respect to communications and transactions with third parties regarding the Loan and/or any and all other loans made by Lender to Borrower.

13. **ASSIGNMENT OF LOAN:** The Loan may be sold or assigned by Lender without notice to Borrower. Borrower may not assign the Loan or its rights hereunder to anyone without Lender's prior written consent.

14. **SEVERABILITY:** If any provision of this Agreement is contrary to applicable law or is found unenforceable, such provision shall be severed from this Agreement without invalidating the other provisions thereof.

15. **WAIVER:** Lender may delay enforcing any of its rights under this Agreement without losing them, and no failure or delay on the part of Lender in exercising any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or future exercise thereof or the exercise of any other right, power or privilege. Lender may accept late payments or partial payments even though marked "payment in full" without losing any of its rights under this Agreement.

16. **CHOICE OF LAW/JURISDICTION:** Borrower agrees that any action by it against Lender shall only be initiated and prosecuted in Charlotte, North Carolina. Borrower consents to and submits to the exercise of jurisdiction over its person by any court situated in Charlotte, North Carolina, having jurisdiction over the subject matter of any dispute with Lender. Borrower waives any objections to venue or any objections based on forum non conveniens in any action. As a material inducement to the Lender to enter into this Agreement, the Borrower acknowledges and agrees that this Agreement, shall be governed by the laws of the state of North Carolina, as if this Agreement had been executed, delivered, administered and performed solely within the state of North Carolina even though for the convenience and at the request of the Borrower, the Agreement may be executed elsewhere.

R10.07                    Reference Number: OMBNAA000I2P

17. CREDIT INVESTIGATION: Borrower authorizes Lender and any of its affiliates at any time to make whatever credit investigation Lender deems is proper to evaluate Borrower's credit, financial standing and employment and Borrower authorizes Lender to exchange Borrower's credit experience with credit bureaus and other creditors Lender reasonably believes are doing business with Borrower. Borrower authorizes its employer (past, present or future) and other references to release and/or verify information about Borrower to Lender at any time. Borrower also agrees to furnish Lender with any financial statements Lender may request at any time and in such detail as Lender may require.

18. LOAN INFORMATION: Borrower authorizes Lender to release information from its records regarding the Loan, including information provided on Borrower applications, (a) to comply with any served subpoena issued by any state or federal agency or court, (b) to any third party who Lender reasonably believes is conducting an inquiry in accordance with the Federal Fair Credit Reporting Act, (c) to credit and check reporting agencies, and (d) to all of our other bank and financial services affiliates. By opening the Loan and receiving the benefits of the proceeds of the Loan, Borrower authorizes and consents to the sharing of such information by Lender.

19. COMPLETE AGREEMENT/BINDING EFFECT: Lender and Borrower understand and agree that this Agreement constitutes the complete understanding between them and their rights and duties may only be amended in writing. This Agreement shall be binding upon Borrower, any guarantors or other obligors of the Loan, and their successors and assigns, and shall be binding upon Lender and inure to the benefit of Lender and its successors and assigns.

20. LIMITATION OF LIABILITY: Borrower and any guarantor agree that neither Lender nor any of its agents will be liable for any acts or omissions or any error in judgment or mistake of fact or law in exercising any of its rights or remedies hereunder. Further, Lender shall not be liable to Borrower or any guarantor for any indirect, consequential, punitive, or special damages of any kind or nature arising in connection with this Agreement, the Collateral, or the Loan made hereunder. Borrower and each guarantor hereby agrees to indemnify, defend and hold Lender, its parent and affiliates, and its and their officers, directors, employees and agents harmless from and against all loss, liability and expense, including reasonable attorney's fees and expenses, of whatever kind and nature, imposed on, incurred by or asserted against Lender that in any way relate to or arise out of this Agreement, the Loan, the consummation of the transactions contemplated hereby or the Collateral, including but not limited to (a) the selection, manufacture, purchase, acceptance or rejection of any item of Collateral or the ownership of the Collateral; (b) the delivery, lease, possession, maintenance, use, condition, return or operation of the Collateral; (c) payment of property, use, franchise or other taxes imposed on the Collateral when payment of said taxes is demanded or requested from Lender by any taxing authority; (d) any patent or copyright infringement; (e) the conduct of Borrower and any guarantor, and their officers, employees and agents; and (f) a breach by Borrower and/or any guarantor of any of their covenants or obligations hereunder. This provision shall survive expiration or termination of this Agreement.

21. SECURITY INTEREST: In consideration of the Loan, and as security for repayment of the Loan, Borrower grants to lender a security interest in all of Borrower's business assets and personal property, wherever located, and whether now owned or hereafter acquired, including without limitation the following (all of which is collectively and herein referred to as "Collateral"): Accounts, including health-care insurance receivables, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Deposit Accounts, General Intangibles, Supporting Obligations, and the proceeds and products of the foregoing, included but not limited to, payments from insurance claims for the loss, damage or destruction of any of the foregoing. Borrower also grants to Lender a purchase money security interest in the goods, including but not limited to, Equipment and Inventory, purchased using the proceeds from the Loan. Any term used in the UCC and not defined in this Agreement has the meaning given in the term in the UCC, as adopted in the state of North Carolina, and as the same may be amended from time to time.

22. FURTHER ASSURANCES: At its expense the Borrower will defend the title to the Collateral (and any part thereof), and will immediately execute, acknowledge and deliver any financing statement, other notice, renewal, affidavit, deed, assignment, continuation statement, security agreement, certificate or other document that the Lender may require in order to perfect, preserve, maintain, continue, protect and/or extend the lien granted to the Lender under this Agreement or under any other agreement. The Borrower will from time to time do whatever the Lender may require by way of obtaining, executing, delivering, and/or filing financing statements, landlords', mortgagees' or bailees' waivers, notices of assignment and other notices and amendments and renewals thereof, and the Borrower will take any and all steps and observe such formalities as the Lender may require in order to create and maintain a valid lien upon, pledge of, or paramount security interest in, the Collateral. Without implying any limitation on the foregoing, with respect to Collateral that may be perfected by control, the Borrower shall take such steps as the Lender may require in order that Lender may have such control. The Borrower shall pay to the Lender on demand all taxes, costs and expenses incurred by the Lender in connection with the preparation, execution, recording and filing of any such document or instrument.

R10.07                         Reference Number: OMBNAA00012P

The Borrower agrees that a copy of a fully executed security agreement and/or financing statement shall be sufficient to satisfy for all purposes the requirements of a financing statement as set forth in Article 9 of the applicable Uniform Commercial Code. Further, to the extent permitted by applicable laws, the Lender may file, without the Borrower's signature, one or more financing statements or other notices disclosing the Lender's liens and other security interests. All financing statements and notices may describe the Lender's Collateral as all assets or all personal property of Borrower. The Borrower hereby irrevocably appoints the Lender as the Borrower's attorney-in-fact, with power of substitution, in the name of the Lender or in the name of the Borrower or otherwise, for the use and benefit of the Lender, but at the cost and expense of the Borrower and without notice to the Borrower, to execute and deliver any and all of the instruments and other documents and take any action which the Lender may require pursuant to the foregoing provisions of this Section.

23. DISCLAIMER OF WARRANTIES. Lender makes no warranty or representation, either express or implied, as to the value, design, condition, merchantability or fitness for a particular purpose or fitness for use of any goods, services or equipment purchased by Borrower with the proceeds of the Loan ("Purchases"), or any other warranty or representation, express or implied, with respect thereto. Borrower acknowledges that Borrower independently selected and determined the suitability of its Purchases for Borrower's intended use, without being advised by Lender. In no event shall Lender be liable for any loss or damage in connection with or arising out of this Agreement and/or the Purchases and/or Borrower's use of any of the Purchases financed by the Loan. No supplier, broker or salesperson is an agent of Lender or its assignee with respect to the Loan and/or any Purchases, nor are they authorized to waive or alter the terms of this Agreement, and their representations shall in no way affect Borrower's or Lender's rights and obligations as herein set forth. Borrower has no (and hereby waives, discharges and releases all, and agrees not to assert any) defenses affirmative or otherwise, rights of setoff, rights of recoupment, claims, counterclaims, actions or causes of action of any kind or nature whatsoever against Lender, directly or indirectly, arising out of, based upon, or in any manner connected with, the Loan and/or the Purchases, or any related transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, which occurred, existed, was taken, permitted, or begun prior to the execution hereof. Borrower represents, warrants and covenants with and to Lender that Borrower will continue to pay the Loan, regardless any defect in the design, performance, merchantability or fitness for a particular purpose or fitness for use of any Purchases using the proceeds of the Loan.

24. MISCELLANEOUS: All notices, requests or demands which any party is required or may desire to give to any other party under any provision of this Agreement must be in writing, hand delivered, sent by a nationally recognized overnight courier or mailed, addressed to the Lender at the address set forth for Lender in the first paragraph of this Agreement and to the Borrower, at the addresses set forth below, or to such other address as any party may designate by written notice to the other party. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by nationally recognized overnight courier service, on the business day next following the day on which the notice is delivered to such courier; or (c) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. Mail, first class postage prepaid.

25. WAIVER OF TRIAL BY JURY: BORROWER, GUARANTOR AND LENDER HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH BORROWER, GUARANTOR AND LENDER MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO THIS AGREEMENT AND/OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT. THIS WAIVER IS KNOWINGLY, WILLINGLY, AND VOLUNTARILY MADE BY BORROWER, GUARANTOR AND LENDER, AND EACH HEREBY REPRESENTS TO THE OTHER THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. EACH OF BORROWER, GUARANTOR AND LENDER HEREBY FURTHER REPRESENT TO THE OTHER THAT IT HAS HAD THE OPPORTUNITY TO BE REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

26. ARBITRATION-CALIFORNIA RESIDENTS ONLY. Any claim or dispute ("Dispute") by Lender, Borrower and/or Guarantor, against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or the Loan (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties, declaratory judgment, equitable relief or any other remedy permitted by law or equity), including Disputes regarding the applicability of this arbitration section or the validity of the entire Agreement (or any part of it), shall be resolved by binding arbitration. The American Arbitration Association ("AAA") shall conduct the arbitration, under the appropriate AAA commercial rules and procedures in effect at the time the Dispute is filed. The proceeding shall take place in the state of California, and in the city, county, township or other locale of the Borrower and Guarantor, unless some other location is chosen by mutual consent of the parties.

R10.07

Reference Number: OMBNAA000I2P

Rules and forms of the AAA may be found at www.adr.org. If the AAA is unable or unwilling to act as arbitrator, Lender may substitute another nationally recognized, independent arbitration organization that uses a similar code of procedure. The parties shall cooperate with each other in causing the arbitration to be held in as efficient and expeditious a manner as practicable and, in this connection, to furnish such documents and make available such persons as the Arbitrator may request. The parties have selected arbitration in order to expedite the resolution of Disputes and to reduce the costs and burdens associated with litigation. The parties agree that the Arbitrator should take these concerns into account when determining whether to authorize discovery and, if so, the scope of permissible discovery and other hearing and pre-hearing procedures. The arbitrator shall follow existing substantive law to the extent consistent with the AAA and applicable statutes of limitation and shall honor any claims of privilege recognized by law. If any party requests, the arbitrator shall write an opinion containing the reasons for the award. The Borrower, each Guarantor and Lender agree that the Arbitrator shall have the power to award damages, injunctive relief and reasonable attorneys' fees and expenses to any party in such arbitration, subject to the limitations of Section 18 of this Agreement. Without limiting any other remedies that may be available under applicable law, the arbitrator shall have no authority to award punitive damages. Judgment upon any arbitration award may be entered in any court having jurisdiction. For the purposes of this arbitration section, Lender includes Bank of America, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, and assigns, and all of their offices, directors, employees, agents and assigns or any and all of them. This arbitration section does not apply to Disputes between Lender, Borrower and Guarantor previously asserted in any lawsuits filed before the date this Agreement becomes effective. However, this arbitration section applies to all Disputes now in existence or that may arise in the future. This arbitration provision shall survive the expiration or earlier termination of this Agreement. All proceedings and decisions of the arbitrator shall be maintained in confidence, to the extent legally permissible, and shall not be made public by any party or any arbitrator without the prior written consent of all parties to the arbitration, except as may be required by law. The expenses of the arbitration shall be borne by the non-prevailing party to the arbitration, including, but not limited to, the cost of experts, evidence and legal counsel. BOTH PARTIES ACKNOWLEDGE AND AGREE THAT, EXCEPT AS PROVIDED ABOVE, THE EFFECT OF THIS ARBITRATION PROVISION IS TO PROHIBIT CLAIMS FROM BEING LITIGATED IN COURT, INCLUDING THOSE CLAIMS THAT COULD HAVE BEEN TRIED BEFORE A JURY.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered as of the day and year first above written.

BORROWER:   J. Andrew McKamie, DDS, PC

GUARANTOR:   James Andrew McKamie

STREET ADDRESS:   3645 N. Council Road

CITY/STATE/ZIPCODE:   Bethany OK, 73008

By: X _Andrew McKamie_

Print Name: James Andrew McKamie

Title: President

Date: 12-4-07

LENDER: BANK OF AMERICA, N.A.

By: _M. Love_

Print Name: Marcella Love

Title: Officer

12-12-07

R10.07                    Reference Number: OMBNAA00012P

12/04/2007 12:22        Exceptional Dentistry            (FAX)4057898377           P.004/008

## GUARANTY

The undersigned hereby unconditionally and irrevocably guarantees to the Lender: (a) the due and punctual payment in full (and not merely the collectibility) of the principal of the Loan and the interest thereon, in each case when due and payable, all according to the terms of the above Agreement; (b) the due and punctual payment in full (and not merely the collectibility) of all other sums and charges which may at any time be due and payable in accordance with, or secured by, the above Agreement; and (c) the due and punctual performance of all of the other terms, covenants and conditions contained in this Agreement; and (d) all indebtedness, obligations and liabilities of any kind and nature of the Borrower to the Lender, whether now existing or hereafter created or arising, direct or indirect, matured or unmatured, and whether absolute or contingent, joint, several or joint and several, and howsoever owned, held or acquired.

GUARANTOR:

James Andrew McKamie

_[signature]_



R10.07

Reference Number: OMBNAA000I2P