IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| J. ANDREW McKAMIE, DDS, d/b/a<br>CENTER FOR EXCEPTIONAL<br>DENTISTRY,<br><br>     Plaintiff,<br><br>vs.<br><br>PATTERSON DENTAL SUPPLY, INC.,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. CIV-13-173-C<br>)<br>)<br>)<br>) |

MEMORANDUM OPINION & ORDER

This case arises from a contractual dispute involving the attempted return of a product known as the CEREC 3D, a device that allows dentists to manufacture their own dental crowns. Plaintiff McKamie, a dentist, purchased the CEREC 3D from Defendant Patterson Dental Supply in late 2007 for his dental practice. Although the Customer Order Plaintiff initially signed contained Defendant's standard return policy, which included a monthly depreciation of a returnable product's value, Plaintiff also received a letter promising a "100% Satisfaction Guarantee" ("Satisfaction Guarantee"). The Satisfaction Guarantee required Plaintiff to satisfy six conditions, including financing his purchase of the CEREC 3D with Patterson Financing, attending two training seminars, and performing between forty to fifty restorations. The Satisfaction Guarantee then provided: "If at this point, if you [Plaintiff McKamie] cannot justify incorporating this [CEREC 3D] technology into your dental practice, Patterson will allow you to return the product and cancel the remainder of

the financing agreement." (Def.'s Mot. for Summ. J., Dkt. No. 21, at 3; Pl.'s Resp., Dkt. No. 24, Ex. 2.)

Plaintiff initially attempted to return the CEREC 3D in January 2009 after performing between 150 and 160 CEREC restoration procedures over the course of fourteen months, but Defendant refused to accept the return. Several years later, in October 2012, Plaintiff again contacted Defendant about returning the CEREC 3D. Defendant replied by letter, explaining that it would not accept a return because Plaintiff had failed to meet all of the conditions in the Satisfaction Guarantee and arguing that, moreover, the Satisfaction Guarantee's protection had expired. (Pl.'s Resp., Ex. 4.) Plaintiff then commenced this action, asserting claims for breach of contract and fraud. Defendant now moves for summary judgment on both counts.

## I.  LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted). If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect

to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.  A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

## II.  DISCUSSION

### A.  Breach of Contract

The parties agree that the contractual language at issue is the Satisfaction Guarantee. Defendant contends three components of the Satisfaction Guarantee support its Motion for Summary Judgment:  (1) the temporal "at this point" language in the final section of the Satisfaction Guarantee; (2) the Satisfaction Guarantee's fifth condition of attending the Advanced Training; and (3) the Satisfaction Guarantee's second condition of financing with Patterson Financing.

### 1.  Duration of the Satisfaction Guarantee

Defendant first argues that the "at this point" language at the end of the Satisfaction Guarantee established only a limited window for Plaintiff to return the product and receive the Satisfaction Guarantee's promised remedy of a cancellation of all remaining financing payments.  According to Defendant, the only reasonable interpretation of that final clause is to read "this point" as referring to the point in time when Plaintiff had performed between

forty to fifty restorations, meaning the guarantee expired after Plaintiff performed his fifty-first restoration. Defendant argues that had it intended to offer an unlimited test period, the Satisfaction Guarantee would have instead read "at any time," rather than "at this time." Although Defendant's interpretation is certainly a possible reading of the Satisfaction Guarantee, it is not the only reasonable interpretation. As Plaintiff points out, the "at this time" language could also reasonably mean that Plaintiff had to have met all six conditions, including performing at least forty to fifty restorations, in order to give the CERCA 3D a fair trial. If contractual language "'is reasonably susceptible to at least two different constructions,'" it is ambiguous. Otis Elevator Co. v. Midland Red Oak Realty, Inc., 483 F.3d 1095, 1102 (10th Cir. 2007) (quoting Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶ 14, 63 P.3d 541, 546). Thus, a genuine issue of material fact exists as to the proper interpretation of the "at this time" language and summary judgment is inappropriate on this basis. See SCO Group, Inc. v. Novell, Inc., 578 F.3d 1201, 1214-15 (10th Cir. 2009).

2. Express Conditions

Defendant also asks for summary judgment because of Plaintiff's failure to satisfy two of the six express conditions listed in the Satisfaction Guarantee: financing with Patterson Financing and attending an Advanced Training seminar. The parties disagree over whether Plaintiff satisfied the Satisfaction Guarantee's financing requirement. Although Plaintiff initially financed with Patterson Financing, selecting the "90-day skip" option mentioned in the Satisfaction Guarantee, Plaintiff subsequently refinanced with Bank of America for a longer term and lower payments. Plaintiff contends that his sales representative portrayed

4

the Patterson Financing and the Bank of America financing as both offered by Patterson and both covered by the Satisfaction Guarantee. The language of the Satisfaction Guarantee, however, clearly states that the financing must be through Patterson Financing with the 90-day skip, not through Bank of America. Additionally, Plaintiff concedes that he never attended the Advanced Training required by the Satisfaction Guarantee, explaining that his practice became incredibly busy after losing two of its dentists. Therefore, summary judgment is appropriate for Defendant on Plaintiff's breach of contract claim because Plaintiff failed to satisfy at least one of the Satisfaction Guarantee's express conditions.

B.  Fraud

Plaintiff has also alleged that Defendant committed fraud in offering a Satisfaction Guarantee that Plaintiff claims Defendant never intended to honor. Fraud claims, however, are subject to a two-year statute of limitations in Oklahoma, which begins to run after the discovery of the fraud. 12 Okla. Stat. § 95(A)(3). Even if Defendant's failure to accept Plaintiff's return made its Satisfaction Guarantee fraudulent, the statute of limitations would bar Plaintiff's claim. Defendant refused to accept the return of Plaintiff's CERCA 3D in early 2009. In January 2009, after deciding to return the CERCA 3D, Plaintiff contacted the former employee of Defendant who had sold him the device back in 2007. Although that individual told Plaintiff the Satisfaction Guarantee would not have expired, Plaintiff spoke shortly thereafter with a representative of Defendant in Defendant's Oklahoma City office, who clearly enunciated to Plaintiff that the Defendant would not accept return of the CERCA 3D under the Satisfaction Guarantee. Because Plaintiff filed suit on February 5, 2013, well

after the expiration of the two-year statute of limitations period, summary judgment for Defendant is appropriate on Plaintiff's fraud claim.

### III.  CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Dkt. No. 21) is hereby GRANTED.  A judgment will enter accordingly.

IT IS SO ORDERED this 6th day of December, 2013.

ROBIN J. CAUTHRON
United States District Judge